IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| In re Bausch & Lomb Inc. Contacts Lens Solution Products Liability Litigation | ) ) ) ) | MDL No. 1785 |
| *This order relates to:* | ) ) | C/A No. 2:06-MN-77777-DCN |
| Case No. 2:06-CV-03477-DCN | ) ) | |
| Noemi Cortes Irizarry, | ) ) | |
| Plaintiff, | ) ) | **ORDER** |
| v. | ) ) | |
| Bausch & Lomb Inc., | ) ) | |
| Defendant. | ) ) ) | |

This matter is currently before the court on plaintiff's motion to alter or amend judgment pursuant to Federal Rule of Civil Procedure 59(e) and/or for reconsideration and/or a request for oral argument. Specifically, plaintiff requests relief from the court's February 17, 2010 order granting summary judgment to defendant as to all of plaintiff's claims. Plaintiff's basis for the requested relief is a September 18, 2009 physician's report that plaintiff contends shows that she experienced a fungal infection—likely Fusarium keratitis—or, alternatively, shows that a factual controversy exists that precludes summary judgment in favor of defendant. For the reasons set forth below, the court denies plaintiff's motion.

# I. BACKGROUND

Plaintiff filed her complaint against defendant on October 19, 2006, in the United States District Court for the District of Puerto Rico, alleging causes of action for negligence, strict liability, breach of express and implied warranty, misrepresentation, and violation of consumer protection statutes. Plaintiff's case was transferred to this MDL on December 7, 2006. All plaintiffs, including plaintiff Irizarry, were required to submit to defendant Plaintiff Fact Sheets, along with medical records from any physician, hospital, clinic, healthcare provider, or pharmacy that treated them or provided medications for eye related disorders. See Case Management Order No. 3, at 12-13; Plaintiff Fact Sheet, at 18. Plaintiff provided a Plaintiff Fact Sheet to defendant on June 6, 2007, and, at defendant's request, supplemented her response on December 7, 2007, with seventeen pages of medical records related to her treatment at Hyde Park Ophthalmology Group in June 2006. Def. Br. at Ex. B, C. Nothing in Plaintiff's Fact Sheet or the medical records she provided to defendant indicates that she was ever diagnosed with or treated for a *Fusarium* infection. On May 19, 2009, defendant sent plaintiff's attorney a letter stating that a review of the information and records provided to defendant gave "no indication that [plaintiff] suffered a fungal infection," and asking plaintiff's attorney to supplement the documentation provided to defendant if any other documentation existed. Def. Br. at Ex. E (Letter from Rockney Taveau to Emilio Soler). Plaintiff never responded to the letter or provided any additional documentation. Def. Br. at Ex. A (Affidavit of Marie S. Woodbury at ¶¶ 8-10).

On October 20, 2009, defendant filed its motion for summary judgment on all

claims and causes of action asserted by non-*Fusarium* plaintiffs. The plaintiffs' steering committee as well as several individual plaintiffs filed briefs opposing defendant's motion. The court held a hearing on defendant's motion on January 7, 2010. The plaintiffs' steering committee and several individual plaintiffs appeared and argued against defendant's motion. Importantly, plaintiff neither filed a brief in opposition to, nor appeared and argued against, defendant's motion. On February 17, 2010, the court granted defendant's motion as to almost all non-*Fusarium* plaintiffs, including plaintiff Irizarry.[1]

Plaintiff filed the instant motion to alter or amend the court's judgment pursuant to Federal Rule of Civil Procedure 59(e) on March 13, 2010. Plaintiff contends that the court should set aside the judgment against her and keep defendant's motion for summary judgment under advisement in light of "new" evidence. The "new" evidence is a two-page September 18, 2009 report by Dr. Carmen Santos titled, "Expert witness and treating physician report." In her report, Dr. Santos opines that plaintiff was treated for a corneal ulcer in her left eye in 2006 after reportedly having used Renu with MoistureLoc for the care of her contact lenses. Dr. Santos notes that plaintiff's infection was originally treated as bacterial and she was given antibiotics. No fungal cultures were taken.

According to Dr. Santos, due to lack of improvement, plaintiff was seen by a cornea specialist who "suspected Fusarium keratitis due to the clinical appearance of the ulcer and the history of use of the implicated RENU solution." Plaintiff was immediately

---

[1] The court held a handful of cases under advisement for various reasons.

started on anti-fungal medicine and referred to Dr. Santos, who obtained bacterial and fungal cultures, "but the patient was already on the topical anti-fungal Natamycin." Dr. Santos prescribed stronger anti-fungal therapy, and the ulcer eventually healed after several weeks. According to Dr. Santos, plaintiff suffers from vision loss in her left eye and will require a corneal transplant to restore her vision.

Dr. Santos states that the fungal culture was not conclusive for any fungal pathogen because intensive anti-fungal therapy was started before the fungal culture was obtained. The bacterial culture was positive for growth of Propionebacterium acnes, a bacteria frequently found in the normal flora of the eyelids and "an extremely infrequent cause of bacterial keratitis." Dr. Santos concludes by opining that,

> within a certain degree of medical certainty this lady's corneal ulcer was caused by a fungal pathogen, most likely Fusarium species. Fusarium is by far the most prevalent fungus causing keratitis in non-contact lens related keratitis, was the most commonly associated organism in this break-out and so it was the probable cause of this patient's corneal ulcer. Failure to obtain adequate cultures explain[s] why it was not specifically identified and the clinical response to anti-Fusarium therapy versus the lack of response to antibiotic therapy further supports this opinion.

Pl. Br. at Ex. 1 (Report of Dr. Carmen Santos).

## II. DISCUSSION

"[O]nce judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside." Fannon v. Guidant Corp., 583 F.3d 995, 1004 (7th Cir. 2009) (citation omitted). The Fourth Circuit has recognized three grounds for amending an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a

4

clear error of law or prevent manifest injustice." Pacific Ins. Co. v. American Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). "In general 'reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly.'" Id. (quoting Wright et al., *Federal Practice and Procedure* § 2810.1, at 127-28 (2d ed. 1995)). To get relief on the basis of newly discovered evidence, a party must demonstrate that,

> (1) the evidence is newly discovered since the judgment was entered; (2) due diligence on the part of the movant to discover the new evidence has been exercised; (3) the evidence is not merely cumulative or impeaching; (4) the evidence is material; and (5) the evidence is such that is likely to produce a new outcome if the case were retried, or is such that would require the judgment to be amended.

Boryan v. United States, 884 F.2d 767, 771 (4th Cir. 1989) (quoting Taylor v. Texgas Corp., 831 F.2d 255, 259 (11th Cir. 1987)). "A Rule 59(e) motion does not provide a vehicle for a party to undo its own procedural failures, and it certainly does not allow a party to introduce new evidence or advance arguments that could and should have been presented to the district court prior to the judgment." United States v. Resnick, 594 F.3d 562, 568 (7th Cir. 2010) (citation omitted).

Plaintiff invokes the new evidence and manifest injustice grounds of the Rule 59(e) standard. She cannot satisfy either ground. Dr. Santos's report is not "new." It is dated September 18, 2009, almost four months before the hearing on defendant's summary judgment motion. Moreover, it appears to be based on medical records from 2006—records that have been available to plaintiff since that time but ones that have never been provided to the court or to defendant. Several individual plaintiffs, in addition to the plaintiffs' steering committee, submitted briefs in opposition to defendant's motion for summary judgment. Some even appeared at the hearing to argue

5

their positions. In contrast, plaintiff chose to remain silent, even though she could have submitted Dr. Santos's report in opposition to defendant's motion. Plaintiff has provided no justification for her failure to do so. Any perceived injustice plaintiff has suffered resulted from her own doing, and, in any event, there is not the slightest hint of *manifest* injustice. Dr. Santos admits that there is no conclusive proof that plaintiff even suffered from a fungal infection, much less a *Fusarium* infection. Dr. Santos can only opine that "within a certain degree of medical certainty this lady's corneal ulcer was caused by a fungal pathogen, most likely Fusarium species." In the court's view, such an opinion, brought forth by plaintiff at this very late date, does not allow plaintiff to clear the high hurdle of showing manifest injustice.

### III.  CONCLUSION

For the foregoing reasons, plaintiff's motion is **DENIED**.

**AND IT IS SO ORDERED**.

_____
**DAVID C. NORTON**
**CHIEF UNITED STATES DISTRICT JUDGE**

**May 7, 2010**
**Charleston, South Carolina**